IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMACEUTICAL RESEARCH
ASSOCIATES, INC.

      *Plaintiff,*

     v.             No. 1:24-cv-00404-SB

OMNICOMM USA, INC.

      *Defendant.*

---

Abraham Schneider, Stephen B. Brauerman, Ronald P. Golden, III, BAYARD, P.A., Wilmington, Delaware.

      *Counsel for Plaintiff.*

Blake Rohrbacher, Kelly E. Farnan, Sara M. Metzler, RICHARDS, LAYTON & FINGER, PA, Wilmington, Delaware.

      *Counsel for Defendant.*

### MEMORANDUM OPINION

July 25, 2024

---

BIBAS, *Circuit Judge*, sitting by designation.

    To vindicate their rights, parties must act promptly. Pharmaceutical Research Associates agreed to pay OmniComm quarterly for software services. In 2020, OmniComm started overcharging. But Pharmaceutical did not sue to recoup its overpayments until four years later. Because it cannot justify that delay, I grant

OmniComm's motion to dismiss the part of the breach-of-contract claim arising before March 28, 2021.

## I. OMNICOMM OVERCHARGES, SO PHARMACEUTICAL SUES

On this motion to dismiss, I take the complaint's factual allegations as true, drawing all inferences in favor of Pharmaceutical. *Pinkney v. Meadville*, 95 F.4th 743, 746–47 (3d Cir. 2024).

OmniComm licenses and supports software for companies that do clinical drug trials. Compl. ¶ 8. Pharmaceutical contracted to use OmniComm's software in clinical trials that it planned to do in seven cities: Gronigen, Lenexa, Marlton, Martini, Philadelphia, Salt Lake City, and Utrecht. *Id.*

The parties' contract incorporated an "Ordering Document." Compl. Exh. A § 6(b). There, Pharmaceutical agreed to pay $4.5 million to license the software and make extra quarterly support payments. Compl. Exh. B § E.1. The support payments totaled $185,625 per quarter, but they would be reduced if OmniComm did not get the Salt Lake City site live within eighteen months and the rest up and running within thirty-six months. *Id.* at §§ C.1, E.1.

OmniComm quickly fell behind schedule. Though the Salt Lake City site was on time, both the Lenexa and Gronigen sites were late. Compl. ¶ 11. And none of the others ever went live. *Id.* Based on when OmniComm got the various sites up and running, it should have charged $30,937.50 for each quarter in 2020, $61,875.00 for the first three quarters in 2021, and $92,812.50 thereafter. Compl. ¶ 12. Instead, it sent invoices for the full quarterly support payment in 2020, 2021, and the first quarter of 2022. *Id.* That led Pharmaceutical to overpay by $1,175,615. Compl. ¶ 13.

Pharmaceutical eventually realized the mistake. In a 2023 letter, it claimed that OmniComm had materially breached the contract by charging too much. *See* Compl. Exh. C. The contract let a nonbreaching party break it off if the other party "fail[ed] to correct [a] breach within thirty … days of written notice." Compl. Exh. A §12(c). So when OmniComm refused to refund the overpayments, Pharmaceutical ended the contract. Compl. ¶17.

On March 28, 2024, Pharmaceutical sued OmniComm for breach of contract under Delaware law. Compl. ¶¶ 21–36. Two months later, OmniComm filed this partial motion to dismiss. D.I. 14. Because OmniComm is a Delaware company while Pharmaceutical is incorporated in Virginia with a principal place of business in Pennsylvania, this Court has diversity jurisdiction under 28 U.S.C. §1332. *See* Compl. ¶¶3–4.

## II. THE STATUTE OF LIMITATIONS BARS PART OF PHARMACEUTICAL'S CLAIM

### A. If a breach occurred, it was when OmniComm overcharged

A party can move to dismiss for failure to state a claim if the complaint shows that the cause of action falls outside of the statute of limitations. *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 318 n.13 (3d Cir. 2021). Under Delaware law, the statute of limitations for breach-of-contract claims is three years. Del. Code Ann. tit. 10, §8106. "[T]he statute of limitations begins to run when the contract is breached." *Aronow Roofing Co. v. Gilbane Bldg. Co.*, 902 F.2d 1127, 1128 (3d Cir. 1990). Both parties agree that, to fall within the statute of limitations, Pharmaceutical's claim "must arise after March 28, 2021." Resp. Br. 5; Opening Br. 1.

But the parties spar over when the alleged breach occurred. OmniComm argues that, if it breached, each quarterly overcharge was a separate breach. Opening Br. 4–

3

5. Pharmaceutical responds that overcharging alone did not constitute breach, pointing instead to OmniComm's refusal to return the overpayments. Resp. Br. 5–6.

OmniComm is right. The Ordering Document required OmniComm to "suspend support payments for those sites that do not go live." Compl. Exh. B § C.1. So, if OmniComm breached, it was when it ignored that contractual obligation and charged Pharmaceutical the full amount. OmniComm's later failure to return the overpayments was a failure to *cure* an alleged breach, not a breach itself. So Pharmaceutical had three years from each breach to sue.

### B. The continuing-wrong doctrine does not apply here

Pharmaceutical resists this conclusion by pointing to the continuing-wrong doctrine. "[T]he doctrine is a narrow one that typically … applie[s] only in unusual situations…." *Desimone v. Barrows*, 924 A.2d 908, 925 (Del. Ch. 2007). It requires a series of acts "so inexorably intertwined" as to be one continuing wrong. *Price v. Wilmington Tr. Co.*, No. 12476, 1995 WL 317017, at *2 (Del. Ch. May 19, 1995) (internal quotation marks omitted). Under the doctrine, the cause of action "does not accrue until the last act of the continuing wrong." *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1197 (Del. Ch. 2022) (internal quotation marks omitted).

In a breach-of-contract case, the continuing-wrong doctrine usually requires that the "claim cannot be alleged at the time of breach because damages cannot be ascertained at that time." *Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, No. N15C-08-168, 2019 WL 6726836, at *14 (Del. Super. Ct. Dec. 4, 2019). So it does not apply if the plaintiff could have alleged a prima facie breach of contract after a single incident. *AM Gen. Holdings LLC v. Renco Grp., Inc.*, Nos. 7639 & 7668, 2016

4

WL 4440476, at *12 (Del. Ch. Aug. 22, 2016). Nor does it apply just because there are "numerous repeated wrongs of similar, if not same, character over an extended period." *Id.* (internal quotation marks omitted).

Pharmaceutical could have alleged a breach of contract when OmniComm overcharged it in the first quarter of 2020. By then, the parties had a contract, OmniComm had overcharged, and Pharmaceutical had been damaged. *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009). And because the parties knew how many sites had gone live at that time, a court could have given "[c]omplete and adequate relief" then. *Kahn v. Seaboard Corp.*, 625 A.2d 269, 271 (Del. Ch. 1993). That was enough.

Resisting this conclusion, Pharmaceutical relies on *SPX Corp. v. Garda USA, Inc.*, No. N10C-10-162, 2012 WL 6841398 (Del. Super. Ct. Dec. 6, 2012). But its reliance is misplaced. In that case, the court noted that an obligation under the contract might not mature until after the completion of workers-compensation claims that "may have continued for months or years." *Id.* at *3. There are no such continuing claims here. Rather, Pharmaceutical could have alleged "a completed and independent breach of contract" after "each incident of overcharging." *Price*, 1995 WL 317017, at *2. "[N]umerous repeated wrongs" do not add up to one continued wrong. *See Am Gen. Holdings*, 2016 WL 4440476, at *12 (internal quotation marks omitted). So the continuing-wrong doctrine does not apply.

\* \* \* \* \*

As soon as OmniComm overcharged, Pharmaceutical could have sued. Instead, it waited four years. Because that delay places part of its breach-of-contract claim outside Delaware's three-year statute of limitations, I grant OmniComm's partial motion to dismiss.